IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KAREN JENKINS, et al.          :          CIVIL ACTION
                               :
          v.                   :
                               :
THE UNION LABOR LIFE INS. CO., :
INC., et al.                   :          NO. 10-7361


MEMORANDUM

Bartle, J.                                    September 7, 2011

        Plaintiffs[1] are former employees of defendants Union

Labor Life Insurance Company, Inc. ("ULLICO")[2] and Amalgamated

Life Insurance Company ("Amalgamated").  In their amended

complaint, plaintiffs allege that, among other things,

Amalgamated misled them about the requirements for vesting in its

defined benefit plan and then terminated them to ensure they did

not become eligible for plan benefits.  The amended complaint

also names as defendants ULLICO and two labor unions in which

plaintiffs were members, the Industrial Technical and

Professional Employee Union and the Office and Professional

---

1. The named plaintiffs in this case are Karen Jenkins,
Jacqueline Mays, Susan Lolli, Linda Russel, Teresa Lattanze, John
Van Allen III, Donna Anderson, Debra Kontra, Michelle Quarles
Troy Johnson, Sharon Schultz, and Raymond Gunther.  Plaintiffs
also list a John Doe plaintiff who "represents a group of
[Amalgamated] employees, terminated by the company in October
2009, who have not yet retained legal representation."

2. The amended complaint names ULLICO as the "Union Labor Life
Company, Inc.," but ULLICO says its name is the "Union Labor Life
Insurance Company."

International Union.  Plaintiffs contend that defendants violated various provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1003-1461, and the Labor Management Relations Act, 29 U.S.C. § 185(a).

Before the court is the motion of defendant Amalgamated to dismiss Counts I, II, III, IV, V, VII, and VIII of the amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[3]

I.

When deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court accepts as true all factual allegations in the pleading and draws all inferences in the light most favorable to the nonmoving party.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  We then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Thus, the allegations must do more than raise a "'mere possibility of misconduct.'"  Fowler v. UPMC

---

3. Amalgamated is not a defendant to Count VI.  Count VI names as defendants the Industrial Technical and Professional Employees Union and the Office and Professional International Union. ULLICO is a defendant only on Counts I, II, and V.

<u>Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009) (quoting <u>Iqbal</u>, 129 S. Ct. at 1950).

In deciding a motion to dismiss under Rule 12(b)(6), the court may consider "an undisputedly authentic" document upon which a party explicitly relies in pleading its claims, whether or not the document is attached to the challenged pleading.  <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1425-26 (3d Cir. 1997) (quoting <u>In re Donald J. Trump Casinos Sec. Litig.</u>, 7 F.3d 357, 368 (3d Cir. 1993)).

II.

The following facts are viewed in the light most favorable to plaintiffs, the non-moving parties.

In 2004, plaintiffs were employees in the claims department of defendant ULLICO, a company that writes insurance policies to labor unions and employers of unionized employees. ULLICO sponsored a defined benefit plan for its employees, and plaintiffs Mays and Jenkins were enrolled and fully vested in that plan by at least 2004.  The amended complaint does not state whether any of the other named plaintiffs were fully or partially vested in the ULLICO defined benefit plan.

In 2004, ULLICO sold its claims department to Amalgamated.  Amalgamated offered employment to many or all of the employees in ULLICO's claims department.  Around the time of the sale, an ULLICO employee named Kelly Ellston assured the plaintiffs that their defined benefit plan "would remain intact" when they became Amalgamated employees and that ULLICO would

-3-

"cover[] part of the Defined Benefit Plan for Plaintiffs' time served with ULLICO."   According to the amended complaint, ULLICO transferred to Amalgamated the money that would partially fund plaintiffs' benefits under the defined benefit plan.

Around the time plaintiffs became Amalgamated employees, they received a document entitled "Questions and Answers for ULLICARE Staff about Amalgamated Life."  The amended complaint does not describe its author or how it came into plaintiffs' possession.  One questions asks, "Is there a pension plan?"  The answer states, "There is a 3-year eligibility period for [Pennsylvania Service Center] employees to join the Amalgamated Life staff pension plan.  Once you become eligible, the 3-year wait period will be credited towards the 5-year vesting requirement."  This document also states that the years spent working for ULLICO would count for calculating vacation time and short-term disability benefits at Amalgamated, but other benefits would be calculated as if the employee began work at Amalgamated on May 10, 2004.

Amalgamated terminated plaintiffs, who were union members, on October 29, 2010.  No union representative attended the meeting in which plaintiffs were discharged as required by an applicable collective bargaining agreement.  At that meeting, plaintiffs learned they would not receive benefits under Amalgamated's defined benefit plan.  An Amalgamated representative explained to plaintiffs that they would not vest, that is, they would not become eligible to receive benefits under

-4-

Amalgamated's defined benefit plan until January 2011.  According to this Amalgamated representative, plaintiffs could not count any employment prior to 2006 towards the pension plan's five-year vesting period even though plaintiffs began their employment with Amalgamated in 2004.

III.

Count I of the amended complaint, a claim brought under 29 U.S.C. § 1132(a)(1)(B), alleges that ULLICO and Amalgamated breached their fiduciary duty to plaintiffs.  Plaintiffs assert that Amalgamated informed them at the time of their hiring that the five-year vesting period in Amalgamated's defined benefits plan would begin in 2004.  Then, at the time of their termination, Amalgamated asserted that plaintiffs could not count employment prior to 2006 toward the vesting period.  Plaintiffs allege that Amalgamated has breached its fiduciary duty by wrongfully determining plaintiffs have not fully vested in the defined benefit plan and by fraudulently misrepresenting the vesting requirements of the defined benefit plan.[4]  Count I seeks an award of damages, including lost wages and benefits.

Section 1132(a)(1)(B) allows a plan participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the

_____

4. It is unclear whether plaintiffs have applied for benefits under Amalgamated's defined benefit plan of if plaintiffs are presently eligible for benefits.

plan." 29 U.S.C. § 1132(a)(1)(B).[5]  Generally, § 1132(a)(1)(B)
claims seeking an award of benefits under an employee benefit
plan require exhaustion of administrative remedies with the plan
administrator.  Zipf v. Am. Tel. & Tel. Co., 799 F.2d 889, 891-93
(3d Cir. 1986).  A failure to exhaust such remedies requires
dismissal of the claim.  Id.

        Plaintiffs do not contest that they failed to exhaust
administrative remedies with regard to the claim for benefits
presented in Count I but argue that exhaustion would have been
futile and should be excused.  A court may, in its discretion,
excuse exhaustion as futile after considering:

> (1) whether plaintiff diligently pursued administrative
> relief; (2) whether plaintiff acted reasonably in
> seeking immediate judicial review under the
> circumstances; (3) existence of a fixed policy denying
> benefits; (4) failure of the insurance company to
> comply with its own internal administrative procedures;
> and (5) testimony of plan administrators that any
> administrative appeal was futile. Of course, all
> factors may not weigh equally.

Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 249-52 (3d
Cir. 2002).  We many only excuse exhaustion upon "a clear and
positive showing of futility."  D'Amico v. CBS Corp., 297 F.3d
287, 291-93 (3d Cir. 2002).

        In this case, however, plaintiffs have not alleged that
they made any effort to present their claims for benefits to an

---

5. The standard of care that fiduciaries for employee benefit
plans subject to ERISA must meet is described in 29 U.S.C.
§ 1104.  Count II of the amended complaint alleges that by
misleading plaintiffs about the terms of its defined benefit plan
and by claiming plaintiffs are not eligible for benefits,
Amalgamated failed to comply with this standard of care.

Amalgamated employee or anyone responsible for administering the
defined benefit plan from which they seek benefits.  Even when a
plaintiff asserts exhaustion would be futile, our Court of
Appeals has held "that Plaintiffs who fail to make known their
desire for benefits to a responsible company official are
precluded from seeking judicial relief." Id.  In light of
plaintiffs failure to allege any effort to present their claims
to Amalgamated, we cannot excuse exhaustion as futile.

      In contrast to claims under § 1132(a)(1)(B) for plan
benefits, claims brought under § 1132(a)(1)(B) to enforce
statutory ERISA rights do not require exhaustion of
administrative remedies. Zipf, 799 F.2d at 891-93.  Courts have
excused exhaustion under this "statutory rights" exception for
§ 1132(a)(1)(B) claims that involved "(1) discrimination claims
under § 510 of ERISA, or (2) failure to provide plaintiffs with
summary plan descriptions, as required by ERISA." Harrow, 279
F.3d at 252-53 (quoting Harrow v. Prudential Ins. Co. of Am., 76
F. Supp. 2d 558, 566 n.10 (E.D. Pa. 1999)).  In addition to
futility, plaintiffs contend that exhaustion is not required with
regard to Count I because Amalgamated did not provide plaintiffs
with a copy of the summary plan document as required by ERISA.

      Plaintiffs' reliance on this exception is misplaced
because Count I is not a claim to enforce a statutory ERISA
right. See Zipf, 799 F.2d at 891-93.  Where the plan
administrator has refused to provide a participant with summary
plan documents as required by ERISA, plaintiffs need not exhaust

administrative remedies before coming to court to enforce their
statutory right to receive such documents.  Id. (citing Harrow,
76 F. Supp. 2d at 566 n.10 (citing Cohen v. Gross, Sklar &
Metzger, 703 F. Supp. 388 (E.D. Pa. 1989) and Campbell v. Emery
World Wide, No. 93-6568, 1994 WL 519708 (E.D. Pa. Sept. 22,
1994))); see 29 U.S.C. § 1132(c).  Count I plainly seeks an award
of benefits under Amalgamated's defined benefit plan, and
exhaustion of administrative remedies is required before this
claim may proceed.  Zipf, 799 F.2d at 891-93.  Moreover,
plaintiffs do not plead that they have ever asked Amalgamated for
a summary plan document or that Amalgamated refused a request for
that document.

Because plaintiffs have not exhausted administrative
remedies with regard to their claim for benefits, we will dismiss
Count I.

IV.

Count II asserts a claim under § 1132(a)(3) for an
alleged breach of Amalgamated's fiduciary duty to plaintiffs.
Here plaintiffs allege that ULLICO transferred its defined
benefit plan to Amalgamated during the sale of the claims
department.  Plaintiffs assert that Amalgamated received from
ULLICO money that was to be used to pay for plaintiffs' benefits
under the defined benefit plan Amalgamated assumed in the sale.
According to the amended complaint, Amalgamated did not receive
this money.  Plaintiffs also plead that Amalgamated violated its
fiduciary duty by misleading them about the vesting requirements

for the defined benefit plan prior to their employment.  We find that none of the allegations in Count II is plausible in light of the documents plaintiffs attached to their amended complaint and the undisputed plan document Amalgamated submitted with its motion to dismiss.  Iqbal, 129 S. Ct. at 1949.

Plaintiffs Mays and Jenkins attached to the amended complaint letters they received from ULLICO in 2006 and 2007, respectively while they were Amalgamated employees.  These letters confirm that Jenkins and Mays were vested in the "revised retirement plan of ULLICO, Inc." as of May 9, 2004, the date of their termination.  These letters also confirm that plaintiffs will receive a monthly pension benefit from ULLICO's retirement plan as of certain future dates specified in the letters.  These letters are inconsistent with plaintiffs' allegation that ULLICO transferred to Amalgamated funds from which Amalgamated was obligated to pay plaintiffs' pension benefits owed for the time plaintiffs were ULLICO employees.  It is not plausible that ULLICO's retirement plan would pay a retirement benefit to plaintiffs if the money from which that benefit will be paid is now under Amalgamated's control.

The "question and answer" document attached to the amended complaint is also inconsistent with the allegation in Count II that the Amalgamated defined benefit plan is a continuation of the ULLICO pension plan.  The "question and answer" document explicitly states that as Amalgamated employees, plaintiffs would have to wait three years to be eligible for

Amalgamated's pension plan.  This document also notes that the pension plan has a five-year vesting period.  Plaintiffs had already vested in the ULLICO pension plan at the time of their termination from ULLICO.  The amended complaint does not explain why plaintiffs would have to re-vest in Amalgamated's pension plan if Amalgamated had merely assumed responsibility for the ULLICO pension plan in which plaintiffs were already vested.

In sum, plaintiffs have not plausibly alleged that Amalgamated is responsible for benefits due to plaintiffs under the ULLICO pension plan.  Iqbal, 129 S. Ct. at 1949.

Plaintiffs also allege that Amalgamated breached its fiduciary duty to them by misrepresenting the terms of its defined benefit plan.  An employer is a fiduciary for an employee benefit plan if the employer "(i) . . . exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) . . . has any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A); Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 232-35 (3d Cir. 1994).  Amalgamated maintains that the amended complaint does allege any facts from which the court can infer that it owed a fiduciary duty to the defined benefit plan from which plaintiffs seek benefits.

The amended complaint does not allege that Amalgamated exercised any discretion or control over the assets of its

-10-

defined benefit plan.[6]  With regard to Amalgamated's
discretionary authority in administration of that plan,
plaintiffs have alleged only that Amalgamated made
misrepresentations about when plaintiffs would vest in the
benefits available through the plan.[7]

   Our Court of Appeals has held that an employer that is
also a plan administrator can be held liable for breach of
fiduciary duty for misrepresenting the terms of a plan to
employees who are participants in the plan.  Burstein v.
Retirement Account Fund for Emp. of Allegheny Health Educ. &
Research Found., 334 F.3d 365, 384-85 (3d Cir. 2003);  Curcio, 33
F.3d at 233-35; In re Unisys Corp. Retiree Med. Ben. ERISA
Litig., 57 F.3d 1255, 1261 & n.10 (3d Cir. 1995); Smith v.
Hartford Ins. Grp., 6 F.3d 131, 141 n.13 (3d Cir. 1993).  It is
beyond dispute that a plan administrator has a fiduciary duty to
plan participants.  Curcio, 33 F.3d at 234.  The plan documents
for the defined benefit plan in which Amalgamated participates,
however, confirm that Amalgamated is not the plan administrator.

---

6. Plaintiffs alleged that Amalgamated breached its fiduciary
duty by failing properly to account for money received from
ULLICO to pay for plaintiffs' pension benefits under the ULLICO
employee benefit plan.  Again, we find this claim implausible in
light of the documents attached to the amended complaint.  In re
Burlington Coat Factory Sec. Litig., 114 F.3d at 1425-26.

7. Plaintiffs allege in conclusory terms that Amalgamated had
discretionary authority over the defined benefit plan, but they
do not provide other facts that makes this legal conclusion
appear plausible.

Thus, to determine what discretionary authority, if any, Amalgamated had for the defined benefit plan, we look to that plan's literature.  Vaughn v. Met. Life Ins. Co., 87 F. Supp. 2d 421, 426 (E.D. Pa. 2000).[8]  The plan document for the defined benefit plan in which Amalgamated participates reveals that the plan is a trust to which participating employers contribute funds.  The trust's 14 trustees are selected by participating employers, and Amalgamated selects two of these trustees.  The plan's trustees are empowered to manage the funds in the trust, to determine what benefits will be offered to participants, to establish procedures for claiming those benefits, and to set standards under which participants vest in those benefits.  The responsibilities of a participating employer such as Amalgamated are limited to contributing funds and providing the trustees with payroll reports.

From a reading of the amended complaint and the defined benefit plan trust document, there is no basis for inferring that Amalgamated any duties as a fiduciary.  In our view, an employer's two-sentence description of its pension plan in a "question and answer" document given to future employees is an

---

8. Both the Court of Appeals' opinion in Curcio and this court's opinion in Vaughn arose from a defendant's motion for summary judgment.  Amalgamated has represented that the plan document attached to its motion to dismiss is the plan document for the defined benefit plan that is sponsors.  Plaintiffs do not argue that this document is inauthentic or that they seek benefits from a different Amalgamated employee benefit plan.  Accordingly, we may consider this document in deciding the motion to dismiss.  In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1425-26.

insufficient factual ground for a claim alleging a fiduciary duty
under ERISA on the part of Amalgamated.  Amalgamated's motion to
dismiss Count II will be granted.

V.

Counts III and IV assert that Amalgamated fired
plaintiffs to prevent them from becoming eligible for benefits
under its defined benefit plan in violation of 29 U.S.C. § 1140.
Section 1140 states:

> It shall be unlawful for any person to discharge, fine,
> suspend, expel, discipline, or discriminate against a
> participant or beneficiary for exercising any right to
> which he is entitled under the provisions of an
> employee benefit plan ... for the purpose of
> interfering with the attainment of any right to which
> such participant may become entitled under the plan....

29 U.S.C. § 1140.

The only difference between Counts III and IV is that
in Count III, plaintiffs attempt to enforce their § 1140 rights
through 29 U.S.C. § 1132(a)(1)(B), whereas in Count IV,
plaintiffs seek to assert those rights under § 1132(a)(3).  Our
Court of Appeals has held that actions for violations of § 1140
must be brought under § 1132(a)(3), and may not be brought under
§ 1132(a)(1)(B).  Eichorn v. AT&T Corp. (Eichorn II), 484 F.3d
644, 652-54 (3d Cir. 2007).  Accordingly, we will dismiss Count
III.

Amalgamated argues that Count IV should be dismissed
because plaintiffs have failed to allege facts showing that
Amalgamated acted with the specific intent to violate employees'
rights under ERISA, an element of § 1140 claims.  See DeWitt v.

-13-

Penn-Del Directory Corp., 106 F.3d 514, 522 (3d Cir. 1997).  An
"employee's lost opportunity to accrue additional benefits" as an
incidental consequence of termination is an insufficient basis
for inferring specific intent.  Id.  Our Court of Appeals has
observed that even at the summary judgment stage a plaintiff
rarely will have a "smoking gun" demonstrating an employer's
intent to violate employees' rights.  Eichorn v. AT&T Corp.
(Eichorn I), 248 F.3d 131, 149-50 (3d Cir. 2001).  Thus,
plaintiffs may rely instead on circumstantial evidence to prove
specific intent.  Id.

        The amended complaint alleges that even prior to the
beginning of their employment, Amalgamated misled plaintiffs
about the vesting requirements for the defined benefit plan,
leading plaintiffs to believe they would vest in the defined
benefit plan in 2009.  Then, Amalgamated terminated all remaining
former ULLICO employees on the same day in October 2010, claiming
those employees would not vest in the defined benefit plan until
January 2011.  Thus, Amalgamated terminated plaintiffs three
months before Amalgamated claimed plaintiffs would vest in the
defined benefit plan.  Although it is not the only permissible
inference to be drawn from these facts, the court can plausibly
infer that Amalgamated acted with the specific intent to
terminate plaintiffs in order to prevent them from vesting in the
defined benefit plan in violation of § 1140.  See Eichorn I, 248
F.3d at 149.

In the prayer for relief accompanying Count IV, plaintiffs request judgment "in the form of damages, including recovery for lost wages and benefits . . . costs and attorney fees . . . [and] any other such equitable relief the court may deem proper and just."  In actions under § 1132(a)(3) the court only may award relief that was "typically available in equity in the days of the divided bench," such as injunctions, equitable liens, constructive trusts, and restitution.  <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>, 534 U.S. 204, 212-13 (2002). Traditional equitable remedies do not include compensatory damages.  <u>Sereboff v. Mid-Atl. Med. Servs. Inc.</u>, 547 U.S. 356, 359-65 (2006); <u>see</u> <u>Eichorn II</u>, 484 F.3d at 655.  Count IV will be dismissed to the extent it seeks compensatory damages.

VI.

In Count V, plaintiffs allege that Amalgamated should be equitably estopped from taking a position regarding their eligibility for benefits under the defined benefit plan that varies from the representations Amalgamated made when plaintiffs began employment.  "[T]o state a cause of action for equitable estoppel under . . . 29 U.S.C. § 1132(a)(3), an ERISA plaintiff must establish (1) a material representation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances."  <u>Burstein v. Retirement Account Fund for Emp. of Allegheny Health Educ. & Research Found.</u>, 334 F.3d 365, 383 (3d Cir. 2003).  Amalgamated asserts that plaintiffs have failed adequately to plead any of these elements.

-15-

"A misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision about if and when to retire." Pell v. E.I. DuPont de Nemours & Co. Inc., 539 F.3d 292, 300 (3d Cir. 2008) (quoting Fisher v. Phila. Elec. Co., 994 F.2d 130, 035 (3d Cir. 1993)) (alterations omitted).  At the time plaintiffs became Amalgamated employees, they received a "question and answer" style explanation of the benefits they would receive as Amalgamated employees.  Although the source of the document is not alleged, it appears to be an Amalgamated document.  The document explains working conditions and benefits at Amalgamated in the first person plural, as if it were written by Amalgamated for its future employees.  As noted above, this document states that Amalgamated sponsors a "pension plan," and that ULLICO employees will be eligible to join that plan after three years of service at Amalgamated.  Once the employee becomes eligible to join, that three-year wait period is credited towards the plan's five-year vesting requirement.  This document also states that years of service to ULLICO would be considered for vacation and disability benefits, but for other benefits the employees' years of service would be counted from May 10, 2004. In October 2009, Amalgamated informed plaintiffs that they could not count any employment prior to 2006 toward the defined benefit plan's vesting requirement.  Thus, plaintiffs have plausibly alleged that Amalgamated made misrepresentations about plaintiffs' eligibility for benefits.

Plaintiffs' reliance on this representation must have been reasonable and must have caused injury.  Id. at 301.  It is plausible that an employee beginning employment with a new employer would rely on statements such as those presented in the "question and answer" document to understand the new company's benefit scheme.  It is also plausible that employees would choose to save less through other investment vehicles if they are misled into believing they will be eligible for benefits under a defined benefit plan.  Plaintiffs' amended complaint states that they relied on the defendants' representations and "were deprived of the opportunity to adequately evaluate and pursue other options."  Thus, plaintiffs have adequately pleaded detrimental reliance.

Finally, plaintiffs must allege extraordinary circumstances.  Id. at 303-04.  In this context, the phrase "extraordinary circumstances" does not have a "rigid definition," but typically involves "acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or commission of fraud."  Jordan v. Fed. Express Corp., 116 F.3d 1005, 1011 (3d Cir. 1997).  In the light most favorable to plaintiffs, the amended complaint alleges that Amalgamated changed the vesting requirements for the defined benefit plan during employment without informing them.  Under the explanation of the defined benefit plan plaintiffs received from Amalgamated at the start of their employment, they would vest in the plan in 2009.  When they were terminated, plaintiffs learned for the first time they would not vest in that plan until 2011.  From

-17-

these facts we can infer that Amalgamated changed the vesting requirements for the defined benefit plain without telling plaintiffs, which creates a plausible allegation of extraordinary circumstances.  Id.; see Curcio, 33 F.3d at 237-38.

Amalgamated's motion to dismiss Count V of the amended complaint will be denied.

VII.

In Count VII, plaintiffs allege that Amalgamated terminated plaintiffs without the presence of a union representative as required by a collective bargaining agreement. Plaintiffs allege this violated § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a).

Amalgamated contends this claim should be dismissed because plaintiffs failed to exhaust remedies provided under the collective bargaining agreement between Amalgamated and the defendant unions.  "It is well established that in order to maintain a § 301 action on a labor contract, an employee must first exhaust the grievance and arbitration provisions of a contract." Koshatka v. Phila. Newspapers, Inc., 762 F.2d 329, 334 (3d Cir. 1985) (citing Republic Steel Corp. v. Maddox, 379 U.S. 650, 652-53 (1965)); Findley v. Jones Motor Freight, Div. Allegheny Corp., 639 F.2d 953, 957 (3d Cir. 1981).

Employees are excused from exhausting procedures under the collective bargaining agreement, however, if they can show that the union breached its duty of fair representation in the handling of a grievance filed pursuant to a collective bargaining

-18-

agreement.  <u>Vaca v. Sipes</u>, 386 U.S. 171, 185-87 (1967).  Such a
breach "occurs only when a union's conduct toward a member of the
collective bargaining unit is arbitrary, discriminatory, or in
bad faith."  <u>Id.</u> at 190.  Plaintiffs assert that the union's
breach of its duty of fair representation, as alleged in Count VI
of the amended complaint, excuses their failure to exhaust any
remedies provided in the collective bargaining agreement.  Count
VI alleges various ways in which plaintiffs' union
representatives provided substandard representation over a
significant period of time.

    The cases that plaintiffs rely upon addressed very
different circumstances than those before the court.  The cases
on which plaintiffs rely, including <u>Vaca</u>, concerned an employee
who filed a grievance with his union pursuant to a collective
bargaining agreement and the union's breach of its duty of fair
representation while prosecuting that grievance.  <u>Id.</u> at 908-09;
<u>Rehm v. Quaker Oats Co.</u>, 478 F. Supp. 619, 620-21 (M.D. Pa.
1979).  The Supreme Court has held that a union's failure to take
appropriate action on a grievance should not deprive the employee
of the opportunity to enforce his or her statutory rights against
the employer for a violation of the collective bargaining
agreement.  <u>Vaca</u>, 386 U.S. at 183-86.

    Plaintiffs do not allege that they filed a grievance
concerning Amalgamated's failure to have a union representative
present at their termination or that the relevant unions breached
their duty of fair representation in handling such grievance.

Thus, plaintiffs have not alleged the kind of breach of the duty of fair representation that excuses exhaustion of a collective bargaining agreement's grievance procedure.  While the unions' conduct may have been substandard over a period of time, this does not excuse plaintiffs from attempting to use the grievance procedure in their collective bargaining agreement.  Count VII will be dismissed.

VIII.

Finally, Count VIII alleges that, as an alternative to Counts I, II, III, IV, V, and VII[9], plaintiffs should recover money from Amalgamated to prevent it from being unjustly enriched.  Plaintiffs assert that it would be unjust to allow Amalgamated to retain the money that plaintiffs are entitled to receive under the defined benefit plan.  We construe Count VIII as a claim under § 1132(a)(3) because a state-law claim for unjust enrichment is preempted by ERISA in these circumstances. 29 U.S.C. § 1144; Wirth v. Aetna U.S. Healthcare, 469 F.3d 305, 308-09 (3d Cir. 2006).  Amalgamated does not dispute that plaintiffs may plead an unjust enrichment claim as an alternative means of recovery under § 1132(a)(3).

Amalgamated's argument to dismiss Count VIII relies exclusively on a memorandum of understanding between Amalgamated and the defendant unions.  This document is not an undisputedly

---

9. It is unclear how the claim for unjust enrichment against Amalgamated for its failure to pay benefits due under an ERISA plan in Count VIII is an alternative to plaintiffs' claim for violation of the Labor Management Relations Act in Count VII.

authentic document on which plaintiff relied in pleading Count VIII.  Accordingly, we may not consider the document or its contents in deciding Amalgamated's motion.  <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d at 1425-26.  The motion to dismiss Count VIII will be denied.