UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------------x
KAREN JENKINS, JACQUELINE MAYS, :
SUSAN LOLLI, LINDA RUSSELL, TERESA :
LATTANZE, JOHN VAN ALLEN III, DONNA :
ANDERSON, DEBRA KONTRA, MICHELLE :
QUARLES, TROY JOHNSON, SHARON :
SCHULTZ, RAYMOND GUNTHER and :
JOHN DOE, :
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Plaintiffs,　　　　　　　　　:  Civil Action No. 10-7361
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　vs.　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
THE UNION LABOR LIFE COMPANY, :
INC.; THE AMALGAMATED LIFE :
INSURANCE COMPANY; :
INDUSTRIAL, TECHNICAL AND :
PROFESSIONAL EMPLOYEES UNION; :
and OFFICE AND PROFESSIONAL :
INTERNATIONAL UNION, :
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Defendants.　　　　　　　　　:
------------------------------------------------------------x

**DEFENDANT AMALGAMATED LIFE INSURANCE COMPANY'S
REPLY MEMORANDUM OF LAW IN FURTHER
<u>SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ... 1
II. FACTUAL BACKGROUND ... 2
III. LEGAL ARGUMENT ... 3
A. Plaintiffs' Claim That ALICO Terminated Their Employment To Prevent Them From Attaining Pension Benefits Fails As A Matter of Law. ... 3
1. The Board of Trustees Properly Amended the Staff Defined Benefit Plan in April 2004 to Exclude Plaintiffs' Participation. ... 3
2. Plaintiffs were not vested in the Staff Defined Benefit Plan by 2009 and the 2010 CBA proposals did not violate Section 510. ... 5
3. The three-year eligibility period in the Q&A did not violate Section 510. ... 7
B. Plaintiffs' Claim For Equitable Estoppel Fails As A Matter of Law. ... 8
1. ALICO did not make a material representation about Plaintiffs' participation in the Staff Defined Benefit Plan. ... 8
2. Plaintiffs cannot have reasonably and detrimentally relied on the Q&A. ... 10
3. The evidence shows that extraordinary circumstances do not exist. ... 11
4. Plaintiffs' claim for equitable estoppel is time barred. ... 12
C. Plaintiffs' Claim For Unjust Enrichment Fails As A Matter of Law. ... 12
IV. CONCLUSION ... 13

## TABLE OF AUTHORITIES

### CASES

*Bauer v. Summit Bankcorp.*, 325 F.3d 155 (3d Cir. 2003)……………………………………..7

*Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1993)…………………………………………...7

### STATUTES

Fed. R. Civ. P. 56 ................................................................................................................. 1

29 U.S.C. § 1024(b) ........................................................................................................ 2, 7

29 U.S.C. § 1054(h) ........................................................................................................ 2, 7

29 U.S.C. § 1140 ......................................................................................................... 3, 5, 7

Defendant, Amalgamated Life Insurance Company ("ALICO"), by its attorneys, respectfully submits this reply memorandum of law in further support of its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP") on the claims remaining in Plaintiffs' Amended Complaint (the "Complaint"). For the reasons set forth in this reply memorandum of law, and in ALICO's Memorandum of Law in Support of Its Motion for Summary Judgment (the "Memorandum"), ALICO's motion for summary judgment should be granted in its entirety.

## I.  PRELIMINARY STATEMENT

Plaintiffs' Opposition to Defendant ALICO's Motion for Summary Judgment (the "Opposition") attempts to muddy the issues by alleging irrelevant facts or "facts" that are untrue based on uncontroverted evidence. This is a simple case. As members of a collective bargaining unit represented by a union, the Industrial, Technical & Professional Employees Union (the "Union"), all terms and conditions of Plaintiffs' employment—including participation in any pension plans—must be negotiated by the Union and ALICO. Collective bargaining occurred in 2004, 2007, and 2010, each time resulting in a new collective bargaining agreement ("CBA") specifying the terms and conditions of Plaintiffs' employment. None of these CBAs required ALICO to contribute to the Consolidated Retirement Plan (the "Staff Defined Benefit Plan") on behalf of Plaintiffs before January 1, 2011.

Plaintiffs continue to ignore the fact that ALICO was not the entity making benefit decisions on behalf of the Staff Defined Benefit Plan, the multiemployer defined benefit pension plan in which Plaintiffs would have participated had they not been specifically excluded by the Board of Trustees. The Staff Defined Benefit Plan is an employee benefit plan governed by a Board of Trustees who are selected by participating employers. Although ALICO performs certain administrative functions for the Staff Defined Benefit Plan, only the Board of Trustees

has, or had, the right to amend the Staff Defined Benefit Plan. The responsibilities of a participating employer like ALICO "are limited to contributing funds and providing the trustees with payroll reports." (*See* Docket No. 61, this Court's September 7, 2011 Order, at p. 12.)

Plaintiffs' Opposition attempts to assert at least two issues that contravene this Court's prior orders. First, Plaintiffs attempt to assert a cross motion for summary judgment. The First Scheduling Order filed on October 7, 2011 required that all parties "shall file and serve any dispositive motion, together with supporting brief on or before July 16, 2012." (*See* Docket No. 67.) The second and third scheduling orders entered by this Court did not alter the dispositive motion deadline. (*See* Docket Nos. 81 and 93.) All Defendants[1] timely filed their respective motions for summary judgment on or before July 16, 2012; Plaintiffs failed to do so. (*See* Docket Nos. 74, 77, 78, and 79.) Plaintiffs' motion for summary judgment contained in Plaintiffs' Opposition therefore violates the Court's scheduling orders.

Second, as discussed *infra* in Section III.A.2 of this reply memorandum, Plaintiffs attempt to circumvent the Court's August 22, 2012 Order denying Plaintiffs leave to amend the Amended Complaint (*see* Docket No. 92) by alleging violations of Section 204(h) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1054(h) ("Section 204(h)") and Section 104(b) of ERISA, 29 U.S.C. § 1024(b) ("Section 104(b)").

## II. FACTUAL BACKGROUND

ALICO refers the Court to Section II, Factual Background, of its Memorandum and its Statement of Undisputed Facts submitted therewith. (*See* Docket No. 79-1, 2.)

---

[1] There were originally four defendants in this case: ALICO, the Union, the Office & Professional Employees International Union ("OPEIU"), and the Union Labor Life Insurance Company ("ULLICO"). On a telephone conference with all parties on August 10, 2012, the Court instructed Plaintiffs to dismiss with prejudice defendants ULLICO, the Union, and OPEIU. Plaintiffs dismissed ULLICO and the Union on August 17, 2012. (*See* Docket Nos. 89 and 90.) OPEIU technically remains in the case, although Plaintiffs did not oppose OPEIU's motion for summary judgment.

### III.   LEGAL ARGUMENT

### A.   Plaintiffs' Claim That ALICO Terminated Their Employment To Prevent Them From Attaining Pension Benefits Fails As A Matter of Law.

Plaintiffs fail to show that there is a genuine issue of material fact that would enable them to establish a *prima facie* case of discrimination under Section 510 of ERISA, 29 U.S.C. § 1140 ("Section 510"), that ALICO had the specific intent to violate Section 510, and that ALICO's reasons for terminating Plaintiffs—a legitimate business decision made by its Executive Committee because of the poor economic environment, reduced work, and the move to having one claims processing system at one location—were pretextual.  (*See* Memorandum at Sections III.B.2 and 3 at pp. 11-14.)

Plaintiffs attempt to create a factual question concerning "specific intent" by raising three new scenarios in support of their Section 510 claim:  (i) ALICO failed to properly amend the Staff Defined Benefit Plan in 2004 excluding Plaintiffs from participation, (ii) the 2010 CBA proposals somehow "interfered with Plaintiffs' attainment of their vested benefits," and (iii) the three-year eligibility period referenced in the March 2004 Questions & Answers document ("Q&A") amounted to discrimination.

### 1.   The Board of Trustees Properly Amended the Staff Defined Benefit Plan in April 2004 to Exclude Plaintiffs' Participation.

Plaintiffs, for the first time, raise the issue of the validity of the April 14, 2004 amendment to the Staff Defined Benefit Plan.  Contrary to Plaintiffs' assertion, prior to Plaintiffs' employment at ALICO, the Board of Trustees properly amended the Staff Defined Benefit Plan on April 14, 2004 to exclude the employees in the Pennsylvania Service Center ("PSC") where all Plaintiffs worked.  (*See* SOF Exh. 21; PSOF Exh. 28.[2])  The Staff Defined

---

[2] "SOF ¶ __" refers to ALICO's Statement of Undisputed Material Facts submitted to the Court on July 16, 2012 with the Memorandum.  "SOF Exh. __" refers to the exhibit attached to ALICO's Statement of Undisputed Material Facts.  "PSOF ¶ __" refers to Plaintiffs' Statement of Undisputed Material Facts submitted to the Court on

-3-

Benefit Plan's Agreement and Declaration of Trust (the "Trust Agreement") granted the Trustees "the authority to amend, improve, revise, reduce or eliminate any benefit provided by the Retirement Plan … Additionally, the Trustees may amend the Plan, in the future, or retroactively, when they consider the same adviseable." (*See* Docket No. 51-4, Amended and Restated Trust Agreement effective December 6, 2008, at p. 27.)[3] The Trust Agreement further provides that "all amendments thereto adopted by the Trustees shall be filed by the Trustees as part of the records and minutes of the Trustees." (*Id.*) The April 14, 2004 meeting minutes of the Staff Defined Benefit properly record the Trustees' valid amendment to the Staff Defined Benefit Plan. (*See* SOF Exh. 21, PSOF Exh. 28 at p. 10.)

      Plaintiffs assert that no vote was conducted to support the amendment because the word "vote" does not appear in the minutes. (*See* Opposition at p. 15.) The minutes show that a vote was conducted: "Upon motion duly made, seconded and unanimously carried, the [Defined Benefit] Pension Plan was amended to provide that the [ALICO] employees employed in the [PSC] would not be covered for pension benefits." (SOF Exh. 21, PSOF Exh. 28 at p. 10.) The word "vote" does not need to appear in the minutes for the Trustees to amend the Staff Defined Benefit Plan. The meeting minutes reflect that the Trustees agreed to exclude Plaintiffs from the Staff Defined Benefit Plan. (*Id.*)

---

September 12, 2012 with the Opposition. "PSOF Exh. __" refers to the exhibit attached to Plaintiffs' Statement of Undisputed Material Facts.

[3] Plaintiffs' Opposition endeavors to create a "process" for amending the Staff Defined Benefit Plan from Michael Hirsch's deposition testimony. (Opposition at pp. 15-16; PSOF ¶ 22.) Plaintiffs misconstrue Mr. Hirsch's testimony. He did not describe a formal process by which the Board of Trustees must amend the Staff Defined Benefit Plan. His testimony, that Plaintiffs highlight, concerns what "might" happen if a participating employer desired a change to the plan document. The Board of Trustees has the sole authority to change the plan. (*Compare* PSOF ¶ 22 *with* PSOF Exh. 6, 30: 12-24; *see also* Docket No. 51-4 at p. 27.)

### 2. Plaintiffs were not vested in the Staff Defined Benefit Plan by 2009 and the 2010 CBA proposals did not violate Section 510.

Plaintiffs were not "already vested" in the Staff Defined Benefit Plan by the time of the April 2010 CBA vote. (*Cf.* Opposition at p. 18.) None of the CBAs governing Plaintiffs' employment at ALICO required ALICO to contribute to the Staff Defined Benefit Plan prior to January 1, 2011.[4] (SOF ¶¶ 24, 30, 45.) Plaintiffs contend that Plaintiffs "first learned they were not receiving a pension when they were terminated" on October 8, 2010. (Opposition at p. 17.) Undisputed facts in this case show that there is no reasonable way that Plaintiffs can claim they did not know they were not participants in the Staff Defined Benefit Plan prior to their termination on October 8, 2010. Their offer letters, the 2004 General Overview of Coverage and Benefits ("General Overview"), and the 2004 and 2007 CBAs—which all Plaintiffs received— did not include their participation in any defined benefit pension plan (but did reference a 401(k) plan). (SOF ¶¶ 14, 16, 22, 24, 26, 30, 32.)

As set forth more fully in Sections II.B at pp. 4-5 and II.C at pp. 5-6 of the Memorandum, the Union raised the possibility of Plaintiffs' participation in the Staff Defined Benefit Plan during the 2004 and 2007 collective bargaining negotiations. ALICO refused this demand in 2004 and 2007 and the Union instead chose to pursue other benefits for Plaintiffs. (*See* SOF ¶ 22, SOF Exh. 26; SOF Exh. 15 at ¶8: "the Union chose to pursue enhanced severance benefits and increased wages for the plaintiffs.") Rather than interfering with benefits, the two proposals Plaintiffs voted on during the 2010 collective bargaining negotiations effectuated

---

[4] For the reasons set forth in Section III.C.1 at pp. 15-17 of the Memorandum and SOF ¶¶ 8-10, the pre-employment Q&A does not contain a material representation on which Plaintiffs could have relied. Similarly unavailing, and as discussed more fully in footnote 9 *infra* is Plaintiffs' claim that the General Overview of Coverage and Benefits allegedly received in July 2005 serves as persuasive evidence that Plaintiffs were fully vested in the Staff Defined Benefit Plan by June 2009.

Plaintiffs' choice to begin participation in the Staff Defined Benefit Plan effective January 1, 2011. (Memorandum at pp. 6-7 of Section II.D and p. 12 of Section III.B.2; SOF Exh. 39.)[5]

For the reasons set forth in detail in Section III.B.1 at pp. 10-11 of the Memorandum, Plaintiffs' allegations concerning the timing of their termination fails. It was not until months after the 2010 MOU was signed that ALICO made the business decision to shut down the claims processing division in the PSC. Plaintiffs rely on November 23, 2010 meeting minutes of ALICO's Executive Committee for the contention that ALICO knew in February 2010 (i.e. during the 2010 CBA negotiations) that they were shutting down the PSC and therefore bargained in bad faith. (Opposition at p. 20; PSOF ¶ 46; PSOF Exh. 15.) The November 23, 2010 meeting minutes, however, reference February 2011—not February 2010. (Walsh Reply Aff. ¶ 4.[6]) At the November 23, 2010 meeting, Mr. Walsh reported on ALICO's contingency plans in the event that ALICO was unable to renew the PSC lease or find appropriate alternative space when the lease expired in February 2011. (*Id.*; *see also* SOF Exh. 42 ("The lease expires at the end of February 2011."); SOF ¶¶ 46-47, 50.)

Plaintiffs' focus on ALICO's July 7, 2010 press release is misplaced. (*See* Opposition at pp. 19-21; PSOF ¶ 35.) Simply because the press release referred to ALICO on the whole as "financially strong" does not mean that ALICO should not take steps to improve its business operations. The Executive Committee of the Board of Directors of ALICO made the decision to shut down the claims processing operation in the PSC for various economic reasons. (*See* Memorandum at pp. 10-11 of Section III.B.1; SOF ¶¶ 47-50.)

---

[5] Plaintiffs' contention that their Union representative, Charles Hampton, retired "during the course of the 2010 CBA negotiations" is false. (Opposition at p. 18.) Mr. Hampton in fact went out on medical leave after the 2010 Memorandum of Understanding ("MOU") was signed by him, Union Shop Stewards Damon Oliver and Linda Russell, and Claire Levitt for ALICO. (*See* SOF Exh. 41; *see also* Hampton Dep. Tr. 88-89: 12-24, 1-6, attached as Exhibit 1: "Q: And were you off for medical leave shortly after [the MOU] was signed? A: Yes.")

[6] "Walsh Reply Aff. ¶ __" refers to the affidavit of David Walsh and submitted herewith.

Finally, in an attempt to avoid this Court's August 22, 2012 Order denying Plaintiffs leave to amend the Amended Complaint (*see* Docket No. 92), Plaintiffs' Opposition alleges violations of Section 204(h) and Section 104(b)—claims that were not raised in either the original Complaint or the Amended Complaint. (*See* Docket Nos. 1 and 42.) Plaintiffs cannot, in an opposition to a motion for summary judgment, assert new claims following the Court's final determination disallowing amendments to the Amended Complaint. (*See* Docket No. 92.)

### 3. The three-year eligibility period in the Q&A did not violate Section 510.

Plaintiffs' argument that ALICO's desire to have a three-year eligibility period for participation in the Staff Defined Benefit Plan shows its specific intent to violate Section 510 is misguided. Even assuming, *arguendo*, that ALICO hired Plaintiffs with the intent to soon close the office—which it did not—the same does not violate ERISA. A violation of Section 510 occurs when an action is taken against employees for "the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." Plaintiffs were specifically excluded by the plan's Board of Trustees from participating in the Staff Defined Benefit Plan and therefore were never participants and not entitled to any rights under the Staff Defined Benefit Plan. (*See* discussion *supra* at Section III.A.1.) ERISA neither requires "that every employee is entitled to participate in a plan that [the employer] does decide to offer…" (*Bauer v. Summit Bancorp.*, 325 F.3d 155, 159 (3d Cir. 2003) (affirming district court's order granting summary judgment for employer)), nor "mandate[s] that employers provide any particular benefits, and it does not itself proscribe discrimination in the provision of employee benefits." *Id.* (*quoting Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91 (1993)).

### B. Plaintiffs' Claim For Equitable Estoppel Fails As A Matter of Law.

Plaintiffs do not, and cannot, establish a genuine issue of material fact in support of their claim for equitable estoppel. There is no genuine issue of material fact to support a conclusion that a material misrepresentation occurred, there was reasonable and detrimental reliance upon the representation, and there are extraordinary circumstances.

#### 1. ALICO did not make a material representation about Plaintiffs' participation in the Staff Defined Benefit Plan.

The undisputed facts contradict any sort of material misrepresentation about pension benefits.[7] Kelly Ellston McKee of ULLICO testified that in March 2004 she conveyed to Plaintiffs that they would have "substantially the same benefits" at ALICO as they had at ULLICO. (Ellston Tr., attached as Exhibit 2, 12: 12-20; Ms. Ellston also testified that Plaintiffs "were concerned about having no job.") ULLICO also sent Plaintiffs letters informing them that any offer of employment by ALICO "likely will include permanent changes in the salary, benefits, and other terms and conditions of employment that you have experienced with ULLICO." (SOF Exh. 24.) Speaking about the March 2004 meeting with Plaintiffs, Claire Levitt of ALICO testified that Plaintiffs "were primarily focused on severance benefits, the health benefits, salary issues. I don't … recall that there was much discussion about the pension." (Levitt Tr., attached hereto as Exhibit 3, 37: 12-19; *see also* p. 36: 10-21: Plaintiffs "were mostly concerned about … the continuation of their jobs. They had been under this cloud for a very long time, that [ULLICO] was thinking of shutting down. They were concerned about the fact that they would keep their jobs.")

---

[7] Plaintiffs rely on the deposition testimony of one Plaintiff, Jacqueline Mays, who said that ALICO representatives informed Plaintiffs in a meeting that "benefits at ALICO would mirror the benefits that Plaintiffs had at ULLICO." (PSOF ¶ 9.) Ms. Mays' statement is belied by the uncontroverted facts, including, for instance, the Q&A. The Q&A provides, for example, that health benefits will in fact change at ALICO. (*See* SOF Exh. 18 at p. 000037.)

-8-

The April 7, 2004 offer letters from ALICO to Plaintiffs gave no details about benefit programs and directed the recipients to a "*General Overview of Coverage and Benefits.*" (SOF Exh. 22.) The General Overview Plaintiffs received, and therefore based their decision on whether to accept employment at ALICO, included a 401(k) savings plan but did not mention participation in any defined benefit pension plan. (SOF Exh. 23; PSOF Exhs. 7, 8A.)[8] Plaintiffs attempt to create an issue of fact by stating that the General Overview mentioned their participation in a pension plan. (Opposition at p. 16.) Ms. Mays' own affidavit, however, contradicts this statement. (*See* PSOF Exh. 7, explaining that PSOF Exh. 8A "was given to myself and the other eleven Plaintiffs.") The General Overview Plaintiffs agree they received in conjunction with their offer letters, dated March 2004 and produced by Plaintiffs and OPEIU, only mentioned a 401(k) plan and did not include Plaintiffs' participation in a defined benefit pension plan. (PSOF Exhs. 7 and 8A; *see also* SOF ¶¶ 14-16, SOF Exh. 23, Memorandum at pp. 15-16 of Section III.C.1.)[9]

---

[8] In footnote 1 of Plaintiffs' Counter Statement of Undisputed Material Fact, Plaintiffs make the outrageous and unsubstantiated statement that "Plaintiffs believe these documents [PSOF Exhs. 8C and D] were changed by either ALICO or ALICO's counsel to conceal the pension information that was included in the original version [PSOF Exh. 8A] provided to Plaintiffs." This is, of course, untrue. ALICO provided the documents to their counsel as they were kept in the ordinary course of business and ALICO's counsel in turn produced the documents.

This is not the first time Plaintiffs have accused ALICO's counsel of unethical conduct without any basis. In Plaintiffs' motion to compel discovery filed on June 29, 2012, Plaintiffs said that "it was brought to Plaintiffs' counsel's attention by opposing counsel for a separate Defendant in the present case that one of ALICO's attorney's insinuated that ALICO was wrongfully withholding relevant documentation from Plaintiffs." (Docket No. 72 at p. 7.) None of the co-defendants' counsel corroborated Plaintiffs' inflammatory accusation. (*See* Docket 72-1 at p. 15.) Plaintiffs' counsel should be sanctioned for making such repeated, bald accusations.

[9] The document that Plaintiffs attach as PSOF Exh. 8B and assert they received in July 2005 (the date on the document) is of no avail. (*See* PSOF Exhs. 7, 8B.) Ms. Mays, on behalf of Plaintiffs, claimed they received this document a year and 3 months after accepting their offer of employment with ALICO so they cannot possibly try to assert that they relied on this statement. (*Cf.* PSOF Exh. 7.) If they did in fact have this document, as Ms. Mays says they did, they should have raised it with their union representatives during the 2007 negotiations. They did not. (*See* SOF ¶ 32.) Plaintiffs also did not produce this document during this litigation; it was produced by ALICO (ALICO 0000983-985 is attached hereto as Exhibit 4; *see also* PSOF Exh. 8B.) If all twelve Plaintiffs allegedly received this document, and relied on it, at least one of them should have had it in their possession and therefore produced it.

### 2. Plaintiffs cannot have reasonably and detrimentally relied on the Q&A.

Plaintiffs challenge ALICO's legal contention that participation in a defined benefit pension plan is the proper subject of collective bargaining. (Opposition at p. 23.) For the reasons set forth more fully in Section III.C.1 at p. 15 of ALICO's Memorandum, Plaintiffs' challenge fails. Plaintiffs attempt to misrepresent Ms. Levitt's deposition testimony so that it appears that she testified that "the pension plan was not bargained for at ALICO that [*sic*] it was just in place." (Opposition at p. 23.) The entire line of questioning is as follows:

> A. For as long as I've been involved in collective bargaining, it's been … the pension plan has already been in place. So it is part of the collective bargaining agreements, but it has not been a subject of negotiations.
>
> Q: Okay. So when you say it's a part of the collective bargaining agreement, is it actually in the agreement?
>
> A: I'm not certain. I'm not certain.
>
> Q: Are you certain of -- you had indicated that it's not bargained for. Do I have that right, it's not something that's typically bargained for?
>
> A: That's not -- that's not correct … it hasn't been the subject of collective bargaining because it is in place… (PSOF Exh. 10 at 93-4: 12-24, 1-6.)

The CBAs covering the terms and conditions of employees represented by a union in ALICO's New York and New Hampshire offices in fact include their participation in the Staff Defined Benefit Plan. (*See* footnote 5 on p. 16 of ALICO's Memorandum; *see also* SOF ¶ 33, SOF Exhs. 30, 31.) Contrary to what Plaintiffs assert, participation in a defined benefit pension plan is referenced in the CBA between ULLICO and Plaintiffs' union, OPEIU. (*Compare* PSOF ¶ 5 *with* PSOF Exh. 1 at p. 245.)

### 3. The evidence shows that extraordinary circumstances do not exist.

The undisputed facts show that there are no extraordinary circumstances in this case. First, Plaintiffs claim that ALICO "actively concealed that it amended the pension plan to exclude Plaintiffs." As discussed more fully in Section III.C.1 at p. 15 of the Memorandum and Section III.B.2 of this reply memorandum, *supra*, pension benefits are a proper and required subject of collective bargaining. The facts, most favorably construed to Plaintiff, are that ALICO and/or ULLICO allegedly told Plaintiffs in the Q&A that Plaintiffs would not be participating in the Staff Defined Benefit Plan for three years. (*Cf.* PSOF Exh. 5.) As explained in more detail in the Memorandum at p. 16 of Section III.C.1, during collective bargaining in 2004, the Union raised Plaintiffs' participation in the Staff Defined Benefit Plan and ALICO rejected that proposal. (*See also* SOF ¶ 22, SOF Exh. 26, Hampton Tr., at p. 38-9: 18-24, 1-20: "Well, if they couldn't afford to put the pension in the package at the time, I took it back to the people and explained it to the people … And there wasn't any agreement to put it in there, nor was there any agreement to fight harder to get it in there.") During the negotiations between the Union and ALICO in 2007 (when the three-year period would have expired), the Union demanded Plaintiffs' participation in the Staff Defined Benefit Plan, but ALICO refused this demand, and the Union chose to pursue other benefits. (*See* Memorandum at p. 6; SOF ¶ 28; SOF Exh. 15 at ¶ 8.) The resulting 2007 CBA therefore did not include any defined benefit pension benefits for Plaintiffs. (*See* Memorandum at p. 6; SOF ¶¶ 29-30; SOF Exh. 29.)

Second, ALICO did not engage in any bad faith, despite Plaintiffs' allegation that the 2010 CBA proposals and resulting vote "change[d] their pension accrual date." (Opposition at p. 25.) For the reasons set forth in Section III.C.3 at pp. 19-20 of the Memorandum and *supra* in Section III.A.2 of this reply memorandum, the 2010 CBA proposals did not change the pension accrual date because they were not yet participants in the Staff Defined Benefit Plan.

Plaintiffs voted on April 8, 2010 to begin their eligibility to participate in the Staff Defined Benefit Plan on January 1, 2011, instead of their other option of participating retroactively effective June 1, 2009.  (Memorandum at p. 19.)  Finally, as discussed Section III.B.1 at pp. 10-11 of the Memorandum and *supra* in Section III.A.2 of this reply memorandum, ALICO did not contemplate or intend to close the claims processing operation in the PSC until months after ALICO and the Union completed the 2010 CBA negotiations and signed the 2010 MOU.

### 4.     Plaintiffs' claim for equitable estoppel is time barred.

For the reasons set forth more fully in Section III.C.4 at pp. 20-21 of the Memorandum, the applicable four-year statute of limitation bars Plaintiffs' equitable estoppel claim.  Plaintiffs adduce no additional evidence or issues of material fact in opposition to ALICO's statute of limitation defense against Plaintiffs' claim for equitable estoppel.  Plaintiffs repeatedly reiterate the false contention that Plaintiffs learned "for the first time" on October 8, 2010 that they would not be receiving a pension from ALICO.  (Opposition at p. 26.)  Uncontested evidence points to the contrary:  neither the 2004 nor the 2007 CBA referenced Plaintiffs' participation in any defined benefit plan, although it was a subject of bargaining raised by the Union.  (SOF ¶¶ 26, 32, 41; *see also* discussion *supra* at Section III.A.2.)  All Plaintiffs received the 2004 CBA and then knew, or should have known, that they were not participants in the Staff Defined Benefit Plan.  (SOF ¶ 26.)  Receipt of the 2004 CBA occurred prior to December 16, 2006 (four years prior to Plaintiffs' initial Complaint).

### C.     **Plaintiffs' Claim For Unjust Enrichment Fails As A Matter of Law.**

Plaintiffs' Opposition again confuses ALICO's involvement in the Defined Benefit Pension Plan with respect to Count VIII for unjust enrichment.  Plaintiffs state that "[b]y denying Plaintiffs the right to their pension benefits and retaining the pension funds, ALICO has been unjustly enriched."  (Opposition at p. 28.)  The Staff Defined Benefit Plan, not ALICO,

pays pension benefits. Plaintiffs, in collective bargaining negotiations, bargained for other improvements in the terms and conditions of their employment and therefore ALICO was not unjustly enriched. (*Cf.* Memorandum at p. 17; SOF Exhs. 38, 41.)

## IV.    CONCLUSION

For the foregoing reasons, and the reasons set forth in ALICO's Memorandum, ALICO respectfully requests that the Court grant its Motion for Summary Judgment in its entirety.

Dated:    September 24, 2012

Respectfully submitted,

/s/ Jonathan S. Krause
Michael L. Banks (I.D. No. 35052)
Jonathan S. Krause (I.D. No. 93817)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
215.963.5387/5510

Ronald E. Richman (admitted *pro hac vice*)
Emily S. Hatch (admitted *pro hac vice*)
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, New York 10022
212.756.2048/2423

Attorneys for Defendant, Amalgamated Life Insurance Company

## **CERTIFICATE OF SERVICE**

I, Jonathan S. Krause, hereby certify that on September 24, 2012, I caused a true and correct copy of the foregoing Reply Memorandum of Law in Further Support of ALICO's Motion for Summary Judgment to be filed electronically and it is available for viewing and downloading from the ECF system. A true and correct copy of the same was served via United States first-class mail, postage prepaid, addressed as follows:

>Julie A. LaVan, Esquire
>The Law Offices of Julie LaVan LLC
>11 E. Main Street, 2nd Floor
>Moorestown, NJ 08057
>
>Attorney for Plaintiffs
>
>Bruce D. Leder, Esquire
>Cohen, Leder, Montalbano & Grossman
>1700 Galloping Hill Road
>Kenil Worth, NJ 07033
>
>Attorney for Defendant, Office and Professional International Union
>
>Matthew G. Connaughton, Esquire
>Cohen, Leder, Montalbano & Grossman
>1700 Galloping Hill Road
>Kenil Worth, NJ 07033
>
>Attorney for Defendant, Office and Professional International Union

/s/ Jonathan S. Krause
Jonathan S. Krause