UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------------ x
KAREN JENKINS, JACQUELINE MAYS,  :
SUSAN LOLLI, LINDA RUSSELL, TERESA :
LATTANZE, JOHN VAN ALLEN III, DONNA :
ANDERSON, DEBRA KONTRA, MICHELLE :
QUARLES, TROY JOHNSON, SHARON :
SCHULTZ, RAYMOND GUNTHER and :
JOHN DOE, :
:
                     Plaintiffs, :   Civil Action No. 10-7361
:
                     vs. :
:
THE UNION LABOR LIFE COMPANY, :
INC.; THE AMALGAMATED LIFE :
INSURANCE COMPANY; :
INDUSTRIAL, TECHNICAL AND :
PROFESSIONAL EMPLOYEES UNION; :
and OFFICE AND PROFESSIONAL :
INTERNATIONAL UNION, :
:
                    Defendants. :
------------------------------------------------------------ x

## AFFIDAVIT OF EMILY S. HATCH

        EMILY S. HATCH, being duly sworn, declares and states as follows:

        1.     I am an attorney admitted to practice before the Courts of the State of New York and admitted to this Court *pro hac vice* in the above-captioned action. I am associated with the law firm Schulte Roth & Zabel LLP, counsel to Defendant, Amalgamated Life Insurance Company ("ALICO"), in the above-captioned action.

        2.     I respectfully submit this Affidavit in support of ALICO's Reply Memorandum of Law in Further Support of Its Motion for Summary Judgment.

        3.     Attached as Exhibit 1 is a true and correct copy of relevant portions of the deposition transcript of E. Charles Hampton, Plaintiffs' union representative employed by former-defendant the Industrial, Technical and Professional Employees Union during collective bargaining negotiations with ALICO.

        4.     Attached as Exhibit 2 is a true and correct copy of relevant portions of the deposition transcript of Kelly Ellston McKee, an employee of former-defendant Union Labor Life Insurance Company.

       5.      Attached as Exhibit 3 is a true and correct copy of relevant portions of the deposition transcript of Claire Levitt, an Executive Vice President of ALICO.

       6.      Attached as Exhibit 4 is a true and correct copy of the General Overview of Coverage and Benefits dated July 2005, which was produced by ALICO with its Bates stamp of ALICO 0000983-5. Plaintiffs' counsel had informed us that they are unable to print documents produced by ALICO with ALICO's Bates stamp.

Pursuant to 28 U.S.C. §1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 24, 2012                  /s/ Emily S. Hatch
                                                  Emily S. Hatch

# EXHIBIT 1

Case 2:10-cv-07361-HB   Document 96-1   Filed 09/24/12   Page 3 of 17

COPY

```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA

                              - - -

KAREN JENKINS, JACQUELINE MAYS,: CIVIL ACTION
SUSAN LOLLI, LINDA RUSSEL,     :
TERESA LATTANZE, JOHN VAN      :
ALLEN, III, DONNA ANDERSON,    :
DEBRA KONTRA, MICHELLE QUARLES,:
TROY JOHNSON, SHARON SCHULTZ,  :
RAYMOND GUNTHER and JOHN DOE,  :
          Plaintiffs,          :
               vs.             :
THE UNION LABOR LIFE COMPANY,  :
INC.; THE AMALGAMATED LIFE     :
INSURANCE COMPANY, INDUSTRIAL  :
TECHNICAL AND PROFESSIONAL     :
EMPLOYEES UNION; and OFFICE AND:
PROFESSIONAL INTERNATIONAL     :
UNION,                         :
          Defendants.          : No. 10-7361

                              - - -

                   THURSDAY, JUNE 7, 2012
                   PHILADELPHIA, PENNSYLVANIA
                              - - -

    Oral Deposition of ELWOOD CHARLES HAMPTON, taken
pursuant to Notice, at Freedman & Lorry, 1601 Market
Street, 2nd Floor, Philadelphia, Pennsylvania, commencing
at approximately 1:05 p.m., on the above date, before
Rose A. Tamburri, RPR, CM, CCR, CRR, USCRA Speed and
Accuracy Champion and Notary Public.
                              - - -
                 CLASS ACT REPORTING AGENCY
              Registered Professional Reporters
1420 Walnut Street         133 Gaither Drive
Suite 1212                 Suite H
Philadelphia, PA  19103    Mt. Laurel, NJ  08054
   (215) 928-9760               (856) 235-5108
```

Case 2:10-cv-07361-HB   Document 96-1   Filed 09/24/12   Page 5 of 17
Jenkins, et al v. ULLICO, et al
Charles Hampton

88

```
 1      A.   Um-hmm, that's the proposal that they
 2   voted for.
 3      Q.   And is that the proposal that was
 4   then incorporated into the final Memorandum of
 5   Understanding?
 6      A.   Yes.
 7      Q.   I'm going to show you what was marked
 8   as Exhibit 5 in the Jenkins deposition; all
 9   right?  It says Memorandum of Understanding on
10   the top.
11      A.   Okay.
12      Q.   Do you know what that document is?
13      A.   This is the proposal that we all
14   agreed to and had to have this incorporated
15   into the language of the Collective Bargaining
16   Agreement and distributed to the members.
17      Q.   Okay.  So this was the final
18   Memorandum of Understanding signed in May of
19   2010?
20      A.   That's correct.
21      Q.   And just to make sure we're clear on
22   this, because there was some confusion before,
23   was it signed in May of 2010 or May of 2011?
24      A.   That was signed in May of 2010.
```

```
 1      Q.   Okay.  And were you off for medical
 2  leave shortly after this was signed?
 3      A.   Yes.
 4      Q.   And you've never come back from
 5  medical leave?
 6      A.   No.
 7      Q.   Are you currently receiving a
 8  pension?
 9      A.   Yes.
10      Q.   And a pension from the ITPE, pension
11  because of your employment with the ITPE?
12      A.   A pension, right, right.
13      Q.   And after you signed this Memorandum
14  of Understanding in May of 2010, did you have
15  any further involvement with the Amalgamated
16  Life Bargaining Unit?
17      A.   No.
18      Q.   At the time you signed this document
19  in May 2010, other than the two people on the
20  negotiating committee, Damon Oliver and Linda
21  Russell, did you speak with any of the other
22  employees?
23      A.   That day?
24      Q.   Yes.
```

# EXHIBIT 2



```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA
                         - - -
KAREN JENKINS, JACQUELINE MAYS,: CIVIL ACTION
SUSAN LOLLI, LINDA RUSSEL,     :
TERESA LATTANZE, JOHN VAN      :
ALLEN, III, DONNA ANDERSON,    :
DEBRA KONTRA, MICHELLE QUARLES,:
TROY JOHNSON, SHARON SCHULTZ,  :
RAYMOND GUNTHER and JOHN DOE,  :
          Plaintiffs,          :
             vs.               :
THE UNION LABOR LIFE COMPANY,  :
INC.; THE AMALGAMATED LIFE     :
INSURANCE COMPANY, INDUSTRIAL  :
TECHNICAL AND PROFESSIONAL     :
EMPLOYEES UNION; and OFFICE AND:
PROFESSIONAL INTERNATIONAL     :
UNION,                         :
          Defendants.          :  No. 10-7361
                         - - -
                MONDAY, MAY 21, 2012
              PHILADELPHIA, PENNSYLVANIA
                         - - -
```

Oral Deposition of KELLY ELLSTON McKEE, taken pursuant to Notice, at DLA Piper, LLP, Liberty Place, 49th Floor, 1650 Market Street, Philadelphia, Pennsylvania, commencing at approximately 9:55 a.m., on the above date, before Rose A. Tamburri, RPR, CM, CCR, CRR, USCRA Speed and Accuracy Champion and Notary Public.

                         - - -
             CLASS ACT REPORTING AGENCY
           Registered Professional Reporters
```
1420 Walnut Street        133 Gaither Drive
Suite 1212                Suite H
Philadelphia, PA  19103   Mt. Laurel, NJ  08054
   (215) 928-9760              (856) 235-5108
```

4348d36e-7c3a-4086-a322-20cb12f8bf1f

Case 2:10-cv-07361-HB   Document 96-1   Filed 09/24/12   Page 9 of 17
Jenkins, et al v. ULLICO, et al
Kelly Ellston McKee

12

```
 1    substantially the same benefits that they had
 2    between the two companies, knowing that they
 3    couldn't have the same benefits, like health
 4    insurance, different carriers and that type of
 5    thing.
 6         Q.    When you explained that it should
 7    have been substantially the same, what did you
 8    relay to the employees?
 9         A.    I would -- again, I cannot remember
10    verbatim.
11         Q.    Okay.
12         A.    The employees were concerned about
13    having no job and concerned about transition,
14    and as I recall, what I conveyed was as we
15    just said, that they would all be offered a
16    position.  Couldn't guarantee what their
17    salaries might be, but that the goal was to
18    have substantially the same benefits, but
19    that, you know, that would be part of their
20    employment with Amalgamated.
21         Q.    Okay.  And negotiating, however,
22    whatever phrase you want to use, there was an
23    adjusted date of hire.  What was the adjusted
24    date of hire for?
```

# EXHIBIT 3



COPY

```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA
                          - - -
KAREN JENKINS, JACQUELINE MAYS,: CIVIL ACTION
SUSAN LOLLI, LINDA RUSSEL,     :
TERESA LATTANZE, JOHN VAN      :
ALLEN, III, DONNA ANDERSON,    :
DEBRA KONTRA, MICHELLE QUARLES,:
TROY JOHNSON, SHARON SCHULTZ,  :
RAYMOND GUNTHER and JOHN DOE,  :
         Plaintiffs,           :
                               :
         vs.                   :
                               :
THE UNION LABOR LIFE COMPANY,  :
INC.; THE AMALGAMATED LIFE     :
INSURANCE COMPANY, INDUSTRIAL  :
TECHNICAL AND PROFESSIONAL     :
EMPLOYEES UNION; and OFFICE AND:
PROFESSIONAL INTERNATIONAL     :
UNION,                         :
         Defendants.           :  No. 10-7361
                          - - -
                 WEDNESDAY, MAY 16, 2012
                  MOORESTOWN, NEW JERSEY
                          - - -
```

Oral Deposition of CLAIRE LEVITT, taken pursuant to Notice, at Lavan Law, 11 E. Main Street, Moorestown, New Jersey, commencing at approximately 10 o'clock a.m., on the above date, before Rose A. Tamburri, RPR, CM, CCR, CRR, USCRA Speed and Accuracy Champion and Notary Public.

```
                          - - -
                 CLASS ACT REPORTING AGENCY
            Registered Professional Reporters
1420 Walnut Street         133 Gaither Drive
Suite 1212                 Suite H
Philadelphia, PA  19103    Mt. Laurel, NJ  08054
   (215) 928-9760             (856) 235-5108
```

4125d6da-c2d9-4127-9a4d-a8bedda0b0c7

```
 1   pension plan was much of a subject of
 2   discussion.
 3   BY MS. LAVAN:
 4       Q.   ALICO knew the employees -- did ALICO
 5   know the employees were concerned about the
 6   pension?
 7            MR. RICHMAN:  Objection.  You're
 8   assuming something that is not in evidence.
 9   BY MS. LAVAN:
10       Q.   Did the employees ask questions about
11   the pension plan?
12       A.   I don't remember specific questions
13   about the pension plan.  I can't say whether
14   they did or they didn't.
15            I think what they were mostly
16   concerned about was -- was the continuation of
17   their jobs.  They had been under this cloud
18   for a very long time, that Union Labor Life
19   was thinking of shutting down.  They were
20   concerned about the fact that they would keep
21   their jobs.
22            They were also concerned about the
23   fact that there were -- that there were salary
24   reductions.
```

```
 1      Q.   How do you know about these concerns?
 2      A.   I was present at meetings when they
 3   were discussed.
 4      Q.   What other concerns did they have?
 5      A.   Specifically on this date?  I don't
 6   recall.
 7      Q.   Through the whole process.
 8      A.   Through the entire period of time
 9   that we were there --
10      Q.   I'm not saying for the whole time.
11      A.   Oh.
12      Q.   I'm saying through the process of the
13   transition.  Let me clarify that.  What other
14   concerns did they have?
15      A.   I think the concerns were primarily
16   focused on severance benefits, the health
17   benefits, salary issues.  I don't -- I don't
18   recall that there was much discussion about
19   the pension.
20      Q.   Do you recall if during the date of
21   this Q and A, so the date is March 19th, 2004,
22   that ALICO was discussing these concerns with
23   the union?
24      A.   With the union?
```

# EXHIBIT 4

# AMALGAMATED LIFE INSURANCE COMPANY

## A General Overview of Coverage and Benefits
## as a Union Employee @ King of Prussia

**Eligibility for Medical, Dental, Life Insurance, Flexible Spending Accounts and the Opt-Out Program is as follows:**

- If you begin employment between the first and tenth day of any calendar month, you will be eligible for coverage on the first day of the calendar month following your date of hire.
- If you begin employment between the eleventh and the last day of any calendar month, you will be eligible for coverage on the first day of the second calendar month following your date of hire.

### HEALTHCARE COVERAGE
(For Regular Employees and their Covered Dependents)

**CIGNA HEALTHCARE – HIGH PLAN** - In/Out of Network Coverage:
- $10.00 co-pay in-network/Specialist co-pay $10.00
- lab services in office, no charge- outside lab $10.00 co-pay
- $50.00 co-pay for emergency room visits, waived if admitted to hospital.
- prescription: $7.00 co-pay for generic, $15.00 co-pay for brand name, $30.00 Non-Preferred
- maintenance prescriptions via mail order: $14 generic, $30 preferred, $60 non-preferred
- out-of-network coverage at 80% R&C, co-insurance 20%
- deductible of $200.00 single, $400.00 family
- maximum out of pocket expense (includes deductible): $1,200 single, $2,400 family
- hospital admission fee of $150.00 paid by ALICO
- lifetime – unlimited benefit

**CIGNA HEALTHCARE – LOW PLAN** - In/Out of Network Coverage:
- $10.00 co-pay in-network/Specialist co-pay $10.00
- lab services in office: no charge, lab services outside office: $15 co-pay
- $35.00 co-pay for emergency room visits, waived if admitted to hospital.
- prescription: $10.00 co-pay for generic, $15.00 co-pay for brand name, $30.00 Non-Preferred
- maintenance prescriptions via mail order: $20 generic, $30 preferred, $60 non-preferred
- out-of-network coverage at 70% R&C, co-insurance 30%
- deductible of $500.00 single, $1,000 family
- maximum out of pocket expense (including deductible): $3,500 single, $7,000 family
- hospital admission fee of $500.00 paid by ALICO
- lifetime – unlimited benefit

**DENTAL PLAN – ALICARE INC.** (for Regular Employees and their Dependents)

**GUARDIAN DENTALGUARD PREFFERRED SELECT PPO:**
In-Network:
- deductible of $50.00 single, $150.00 family (when any 3 members of the family have each paid the deductible of $150.00 in total, then no further deductible will be required).
- 100% of R&C for routine oral exams, once every 6 consecutive month period.
- 90% of R&C for extractions, fillings, root canal, oral surgery, dentures and fixed bridgework. Limit of $1,600.00 per calendar year.
- 50% of R&C for orthodontic treatment and appliances during any one course of treatment with a Lifetime limit of $1,600.00.
- Allowed rollover of $500 in unused benefit in one year to next year, but may not exceed $2,100 at any time.

(07/2005)

ALICO 0000983

**DENTAL PLAN – ALICARE INC. (continued)**
Out-of-Network Coverage:
- deductible of $100.00 for single, $200.00 for family (when any 2 members of the family have each paid the deductible of $200.00 in total, then no further deductible will be required).
- 80% of R&C for routine oral exams, once every 6 consecutive month period.
- 80% of R&C for extractions, fillings, root canal, oral surgery, dentures and fixed bridgework. Limit of $1,600.00 per calendar year.
- 80% of R&C for orthodontic treatment and appliances during any one course of treatment with a Lifetime limit of $1,600.00.
- Allowed rollover of $500 in unused benefit in one year to next year, but may not exceed $2,100 at any time.

**LIFE INSURANCE COVERAGE (For Regular Employees Only)**
- while actively employed, employees are covered for life insurance. The coverage differs between union members and non-union employees and is based on years of service. Life insurance will be paid to one's beneficiary in a lump sum, or if they choose, in installments after notification of death is received.
- if a union member retires with a pension under the provisions of Amalgamated Life's Pension Plan, the life insurance will be reduced in accordance with the policy. One may convert their coverage to an individual policy upon termination of employment.

**WORKERS' LIFE INSURANCE (For Regular Employees and their Dependents)**
- additional life insurance is available after 60 days of employment at a minimum weekly cost for employees and their dependents

**FLEXIBLE BENEFITS PROGRAM (For Regular Employee and Dependent Expenses)**
- the healthcare FSA gives one an opportunity to save taxes on up to $2000 per year of eligible healthcare and dental expenses.
- the dependent care FSA gives one an opportunity to save taxes on up to $5,000 per year of eligible daycare/eldercare expenses ($2,500 if one is a married person who files a separate tax return from their spouse).

**OPT-OUT PROGRAM (For Regular Employee/Dependent Coverage)**
Allows an employee who has other comparable health care coverage, to opt-out of the group medical care coverage and receive a monetary payment instead.
- employee who waives medical coverage will receive $100.00 each month

**OPTICAL COVERAGE (For Regular Employees and their Dependents)**
- regular employees and their dependents are eligible for an optical vision reimbursement program as follows:
    - for employees: $140.00 benefit every 12 mos. OR $175.00 benefit every 24 mos.
    - every 12 mos. for spouses and dependents: $60.00 benefit
    - every 24 mos. for spouses: $120.00 benefit

**WEEKLY DISABILITY COVERAGE (For Regular Employees Only)**
If a staff member is unable to work because of an injury, illness or pregnancy, they are covered for weekly disability income. During any 12 consecutive month period, one can receive disability payments for up to 26 weeks. The total benefit schedule is as follows:
- employment of less than 6 months: 66.2/3% of base salary for 13 weeks up to a maximum of $170.00 a week
- employment of 6 months to 1 year: 75% of base salary, for 13 weeks, 66.2/3% of base salary for the next 13 weeks up to a maximum of $170.00 a week
- employment of 1 year to 2 years: 75% of base salary for 13 weeks, 66.2/3% for the next 13 weeks
- employment of 2 to 4 years: 85% for 13 weeks, 75% for the next 13 weeks
- employment for more than 4 years: 100% of base salary for 13 weeks, 75% for the next 13 weeks

(07/2005)

ALICO 0000984

**WEEKLY DISABILITY COVERAGE (continued)**
- The above benefit maximum covers New York, Pennsylvania, New Hampshire, Las Vegas and California employees.
- New Jersey employees may receive up to a maximum benefit of $459.00/week.

**LONG TERM DISABILITY (For Regular Employees Only)**
- eligibility begins after 3 years of service
- employee must work a minimum of 30 hours per week to be eligible
- scheduled amount: 60% of monthly earnings subject to a maximum amount of $5,000 per month

**401(K) SAVINGS PLAN (For Regular Employees Only)**
- eligibility begins on the first day of the month following date of hire.
- voluntary contributions up to a maximum of 60% of your eligible compensation is allowed. total pre-tax contributions may not exceed $14,000 for 2005 plan year.
- investment options administered by Fidelity Management Group. Choice of 19 options to total 100% of contributions
- company match at 50% of employee's first 3% of contributions
- additional employer discretionary contribution equal to 1.5% x annual salary for all employees, regardless of participation in the plan.

**FIDELITY AUTOMATIC INVESTING PLAN (For Regular Employees Only)**
- eligibility begins on the first day of the month following date of hire.
  after-tax savings plan through Fidelity Investments for additional voluntary payroll deductions.
- plan offers general investing; retirement investing; college planning and managing substantial assets.



**PENSION PLAN (For Regular Employees Only)**
- eligibility begins after three years of employment based on ALICO hire date.
- vesting schedule: 100% vested after 5 years of employment

**TUITION REIMBURSEMENT PROGRAM (For Regular Employees Only)**
- eligible after 1 year of employment for job related approved courses/programs
- eligible for up to two courses per semester

**FITNESS GYM MEMBERSHIP**
- discounted corporate membership rates through payroll deductions
- full service facility is nearby and offers lunchtime fitness programs
- eligibility begins upon date of hire

**QUALIFIED TRANSPORTATION EXPENSE PLAN featuring eTRAC**
- pre-tax purchase program of mass transit & parking expenses through payroll deductions for up to a pre-tax maximum of $105.00 per month for transit and $200.00 per month for parking expenses
- eligibility begins on first day of month following date of hire
- online enrollment & changes are done on a monthly basis

(07/2005)

ALICO 0000985